1
Brett R. Cohen, Esq. (SBN 337543)
bcohen@leedsbrownlaw.com

2
**LEEDS BROWN LAW, P.C.**
One Old Country Road, Suite 347

3
Carle Place, New York 11514
Tel:     (516) 873-9550

4

5
## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

6

7
TORRIE MAYFEILD, on behalf of her minor child, A.M., and on behalf of all others similarly situated,

**Case No.: 2:25-at-00080**

8
Plaintiff,

**CLASS ACTION COMPLAINT**

9
v.

10
POWERSCHOOL GROUP LLC and POWERSCHOOL HOLDINGS, INC.,

**Jury Trial Demanded**

11

12
Defendants.

13
Plaintiff TORRIE MAYFEILD, on behalf of her minor child, A.M., ("Plaintiff"), and on behalf of

14
all others similarly situated ("Plaintiff"), brings this class action against Defendants POWERSCHOOL

15
GROUP LLC AND POWERSCHOOL HOLDINGS, INC. (collectively, "Defendants"), and alleges as

16
follows:

17
**JURISDICTION AND VENUE**

18
1.      This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28

19
U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive

20
of interest and costs, (2) the action is a class action, (3) there are members of the proposed Class who are

21
diverse from Defendants, and (4) there are more than 100 proposed Class members. This Court has

22
supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367 because they form part of

23
the same case or controversy as the claims within the Court's original jurisdiction.

24

-1-
**CLASS ACTION COMPLAINT**

2.      This Court has personal jurisdiction over Defendants because each Defendant maintains a principal place of business in this District and Defendants conduct substantial business in this District.

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) & (2) because each Defendants is a resident and citizen of this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## PARTIES

4.      Plaintiff Torrie Mayfeild is a resident and citizen of Licking, Missouri, where she intends to remain. Plaintiff is the parent of minor A.M. In connection with A.M.'s educational services, Plaintiff provided PII to one of Defendant's clients.

5.      Defendant PowerSchool Group LLC is a limited liability company registered in the State of Delaware, and maintains its principal place of business at 150 Parkshore Drive, Folsom, California.

6.      Defendant PowerSchool Holdings, Inc. corporation registered in the State of Delaware, and maintains its principal place of business at 150 Parkshore Drive, Folsom, California.

## FACTUAL ALLEGATIONS

**Defendants' Business**

7.      Defendants represent that its business "is a leading provider of cloud-based software in K-12 education in North America. We connect students, teachers, administrators, and families with the shared goal of improving student outcomes."[1]

8.      Defendants claims that "As a provider of innovative K-12 software and cloud-based solutions to improve educational outcomes and simplify school operations, central to our operations is the processing of personal data, PowerSchool places great importance and value on the proper handling of personal data that flows within our product as we provide services to our customers. We use the following

---

[1] https://www.powerschool.com/company/ (last accessed Jan. 14, 2025)

**CLASS ACTION COMPLAINT**

Privacy Principles as a guide, and they inform our approach to data privacy and data protection throughout PowerSchool."[2]

9. Defendants further represent that "We seek to protect our customers' personal data from unauthorized access, use, modification, disclosure, loss, or theft by leveraging various reasonable security measures and methods to secure our customers' personal data throughout its processing lifecycle with PowerSchool applications. Our overall aim is to ensure the confidentiality, integrity, and availability of our customers' personal data by leveraging technical, organizational, and where appropriate, physical security methods. Security protection at PowerSchool is a cross-functional activity that intersects our workforce duties, and we have relevant security and privacy policies to drive expectations from the workforce." [3]

10. Plaintiff and Class members are consumers who have provided their information to Defendants' clients.

11. Plaintiff and Class members, by and through Defendants' clients, provided certain Personally Identifying Information ("PII") to Defendants.

12. As a sophisticated company with an acute interest in maintaining the confidentiality of the PII entrusted to it, Defendants are well-aware of the numerous data breaches that have occurred throughout the United States and their responsibility for safeguarding PII in their possession.

**The Data Breach**

13. According to an email notice received by Plaintiff from one of Defendant's clients, it was "On December 28, 2024 PowerSchool detected unauthorized access to certain customer data."[4]

---

[2] https://www.powerschool.com/privacy/ (last accessed Jan. 14, 2025)
[3] Id.
[4] See "RE: Important Security Notification. Please read this entire letter." email dated 1/10/2025 sent to Plaintiff, attached hereto as Exhibit 1. ("Notice Email").

**CLASS ACTION COMPLAINT**

14.     The Notice Email indicates that Defendants' client had been informed that PII had been impacted.[5]

15.     The Notice Email did not indicate why Defendants were unable to prevent the Data Breach or which security feature failed.[6]

16.     The Notice Email did not state why Defendants did not notify this client, among others, until January 7, 2025.[7]

17.     Defendants failed to prevent the data breach because they did not adhere to commonly accepted security standards and failed to detect that their databases were subject to a security breach.

**Injuries to Plaintiff and the Class**

18.     On January 10, 2024, Plaintiff received the Notice Email from one of Defendants' clients, wherein she was advised that PII that had been provided to said client was compromised during the Data Breach.[8]

19.     Since the Data Breach, Plaintiff has received an increase in phishing emails and spam texts.

20.     In response to the Data Breach, Plaintiff has spent significantly more time checking her bank and credit card statements than he did prior to the Data Breach.

21.     Plaintiff is very concerned about the theft of her PII and has and will continue to spend substantial amounts of time and energy monitoring her credit status.

22.     As a direct and proximate result of Defendants' actions and omissions in failing to protect Plaintiff's PII, Plaintiff and the Class have been damaged.

---

[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*

**CLASS ACTION COMPLAINT**

23.     Plaintiff and the Class have been placed at a substantial risk of harm in the form of credit fraud or identity theft and have incurred and will likely incur additional damages, including spending substantial amounts of time monitoring accounts and records, in order to prevent and mitigate credit fraud, identity theft, and financial fraud.

24.     In addition to the irreparable damage that may result from the theft of PII, identity theft victims must spend numerous hours and their own money repairing the impacts caused by this breach. After conducting a study, the Department of Justice's Bureau of Justice Statistics found that identity theft victims "reported spending an average of about 7 hours clearing up the issues" and resolving the consequences of fraud in 2014.[9]

25.     In addition to fraudulent charges and damage to their credit, Plaintiff and the Class will spend substantial time and expense (a) monitoring their accounts to identify fraudulent or suspicious charges; (b) cancelling and reissuing cards; (c) purchasing credit monitoring and identity theft prevention services; (d) attempting to withdraw funds linked to compromised, frozen accounts; (e) removing withdrawal and purchase limits on compromised accounts; (f) communicating with financial institutions to dispute fraudulent charges; (g) resetting automatic billing instructions and changing passwords; (h) freezing and unfreezing credit bureau account information; (i) cancelling and re-setting automatic payments as necessary; and (j) paying late fees and declined payment penalties as a result of failed automatic payments.

26.     Additionally, Plaintiff and the Class have suffered or are at increased risk of suffering from, *inter alia*, the loss of the opportunity to control how their PII is used, the diminution in the value and/or use of their PII entrusted to Defendant, and loss of privacy.

---

[9]   U.S.   Dep't   of   Justice,   *Victims   of   Identity   Theft*,   *2014*   (Nov.   13,   2017), http://www.bjs.gov/content/pub/pdf/vit14.pdf.

-5-

**CLASS ACTION COMPLAINT**

**The Value of PII**

27.    It is well known that PII, and financial account information in particular, is an invaluable commodity and a frequent target of hackers.

28.    According to Javelin Strategy & Research, in 2017 alone over 16.7 million individuals were affected by identity theft, causing $16.8 billion to be stolen.[10]

29.    People place a high value not only on their PII, but also on the privacy of that data. This is because identity theft causes "significant negative financial impact on victims" as well as severe distress and other strong emotions and physical reactions.[11]

30.    People are particularly concerned with protecting the privacy of their financial account information and social security numbers, which are the "secret sauce" that is "as good as your DNA to hackers."[12] There are long-term consequences to data breach victims whose social security numbers are taken and used by hackers. Even if they know their social security numbers have been accessed, Plaintiff and Class members cannot obtain new numbers unless they become a victim of social security number misuse. Even then, the Social Security Administration has warned that "a new number probably won't solve all [] problems … and won't guarantee … a fresh start."[13]

---

[10] Javelin Strategy & Research, *Identity Fraud Hits All Time High With 16.7 Million U.S. Victims in 2017, According to New Javelin Strategy & Research Study* (Feb. 6, 2018), https://www.javelinstrategy.com/press-release/identity-fraud-hits-all-time-high-167-million-us-victims-2017-according-new-javelin.

[11]    Identity Theft Resource Center, *Identity Theft: The Aftermath 2017*, https://www.ftc.gov/system/files/documents/public_comments/2017/10/00004-141444.pdf.

[12] Cameron Huddleston, *How to Protect Your Kids From the Anthem Data Breach*, Kiplinger, (Feb. 10, 2015), https://www.kiplinger.com/article/credit/T048-C011-S001-how-to-protect-your-kids-from-the-anthem-data-brea.html.

[13] Social Security Admin., *Identity Theft and Your Social Security Number*, at 6-7, https://www.ssa.gov/pubs/EN-05-10064.pdf.

**CLASS ACTION COMPLAINT**

**Industry Standards for Data Security**

31.     In light of the numerous high-profile data breaches targeting companies like Target, Neiman Marcus, eBay, Anthem, Deloitte, Equifax, and Capital One, Defendants are, or reasonably should have been, aware of the importance of safeguarding PII, as well as of the foreseeable consequences of their systems being breached.

32.     Security standards commonly accepted among businesses that store PII using the internet include, without limitation:

        a.   Maintaining a secure firewall configuration;

        b.   Monitoring for suspicious or irregular traffic to servers;

        c.   Monitoring for suspicious credentials used to access servers;

        d.   Monitoring for suspicious or irregular activity by known users;

        e.   Monitoring for suspicious or unknown users;

        f.   Monitoring for suspicious or irregular server requests;

        g.   Monitoring for server requests for PII;

        h.   Monitoring for server requests from VPNs; and

        i.   Monitoring for server requests from Tor exit nodes.

33.     The U.S. Federal Trade Commission ("FTC") publishes guides for businesses for cybersecurity[14] and protection of PII[15] which includes basic security standards applicable to all types of businesses.

34.     The FTC recommends that businesses:

        a.   Identify all connections to the computers where you store sensitive information.

---

[14] Start with Security: A Guide for Business, FTC (June 2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

[15] Protecting Personal Information: A Guide for Business, FTC (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting personalinformation.pdf.

**CLASS ACTION COMPLAINT**

b.  Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks.

c.  Do not store sensitive consumer data on any computer with an internet connection unless it is essential for conducting their business.

d.  Scan computers on their network to identify and profile the operating system and open network services. If services are not needed, they should be disabled to prevent hacks or other potential security problems. For example, if email service or an internet connection is not necessary on a certain computer, a business should consider closing the ports to those services on that computer to prevent unauthorized access to that machine.

e.  Pay particular attention to the security of their web applications—the software used to give information to visitors to their websites and to retrieve information from them. Web applications may be particularly vulnerable to a variety of hack attacks

f.  Use a firewall to protect their computers from hacker attacks while it is connected to a network, especially the internet.

g.  Determine whether a border firewall should be installed where the business's network connects to the internet. A border firewall separates the network from the internet and may prevent an attacker from gaining access to a computer on the network where sensitive information is stored. Set access controls—settings that determine which devices and traffic get through the firewall—to allow only trusted devices with a legitimate business need to access the network. Since the protection a firewall provides is only as effective as its access controls, they should be reviewed periodically.

h.  Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or computers, and higher-than-average traffic at unusual times of the day.

i.  Monitor outgoing traffic for signs of a data breach. Watch for unexpectedly large amounts of data being transmitted from their system to an unknown user. If large amounts of information are being transmitted from a business' network, the transmission should be investigated to make sure it is authorized.

35.  The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer information, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice

**CLASS ACTION COMPLAINT**

prohibited by Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.[16]

36.     Because Defendants were entrusted with consumers' PII, they had, and have, a duty to consumers to keep their PII secure.

37.     Consumers, such as Plaintiff and the Class, reasonably expect that when they provide PII to companies such as Defendants, that their PII will be safeguarded.

38.     Nonetheless, Defendants failed to prevent the Data Breach. Had Defendants properly maintained and adequately protected their systems, they could have prevented the Data Breach.

## CLASS ACTION ALLEGATIONS

39.     Plaintiff, individually and on behalf of all others, brings this class action pursuant to Fed. R. Civ. P. 23.

40.     The proposed Class is defined as follows:

> **Nationwide Class**: All persons whose PII was maintained on Defendants' servers and compromised in the Data Breach.

41.     Plaintiff reserves the right to modify, change, or expand the definitions of the proposed Class based upon discovery and further investigation.

42.     *Numerosity*: The proposed Class is so numerous that joinder of all members is impracticable. Although the precise number is not yet known to Plaintiff, the number can be readily identified through Defendants' records.

43.     *Commonality*: Questions of law or fact common to the Class include, without limitation:

    a.  Whether Defendants owed a duty or duties to Plaintiff and the Class to exercise due care in collecting, storing, safeguarding, and obtaining their PII;

---

[16] Federal Trade Commission, *Privacy and Security Enforcement: Press Releases*, https://www.ftc.gov/news-events/media-resources/protecting-consumer-privacy/privacy-security-enforcement.

**CLASS ACTION COMPLAINT**

b.   Whether Defendants breached that duty or those duties;

c.   Whether Defendants failed to establish appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of records to protect against known and anticipated threats to security;

d.   Whether the security provided by Defendants was satisfactory to protect customer information as compared to industry standards;

e.   Whether Defendants misrepresented or failed to provide adequate information to customers regarding the type of security practices used;

f.   Whether Defendants knew or should have known that they did not employ reasonable measures to keep Plaintiff's and the Class's PII secure and prevent loss or misuse of that PII;

g.   Whether Defendants acted negligently in connection with the monitoring and protecting of Plaintiff's and Class's PII;

h.   Whether Defendants' conduct was intentional, willful, or negligent;

i.   Whether Defendants violated any and all statutes and/or common law listed herein;

j.   Whether the Class suffered damages as a result of Defendants' conduct, omissions, or misrepresentations; and

k.   Whether the Class is entitled to injunctive, declarative, and monetary relief as a result of Defendants' conduct.

44.   *Typicality*: The claims or defenses of Plaintiff are typical of the claims or defenses of the Class. Class members were injured and suffered damages in substantially the same manner as Plaintiff, Class members have the same claims against Defendants relating to the same course of conduct, and Class members are entitled to relief under the same legal theories asserted by Plaintiff.

45.   *Adequacy*: Plaintiff will fairly and adequately protect the interests of the proposed Class and has no interests antagonistic to those of the proposed Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions including, but not limited to, data breaches.

46.   *Predominance*: Questions of law or fact common to proposed Class members predominate over any questions affecting only individual members. Common questions such as whether Defendants

-10-

**CLASS ACTION COMPLAINT**

owed a duty to Plaintiff and the Class and whether Defendants breached their duties predominate over individual questions such as measurement of economic damages.

47.   *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of the Class is impracticable. Many members of the Class are without the financial resources necessary to pursue this matter. Even if some members of the Class could afford to litigate their claims separately, such a result would be unduly burdensome to the courts in which the individualized cases would proceed. Individual litigation increases the time and expense of resolving a common dispute concerning Defendants' actions toward an entire group of individuals. Class action procedures allow for far fewer management difficulties in matters of this type and provide the unique benefits of unitary adjudication, economies of scale, and comprehensive supervision over the entire controversy by a single judge in a single court.

48.   *Manageability*: Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

49.   The Class may be certified pursuant to Rule 23(b)(2) because Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

50.   The Class may also be certified pursuant to Rule 23(b)(3) because questions of law and fact common to the Class will predominate over questions affecting individual members, and a class action is superior to other methods for fairly and efficiently adjudicating the controversy and causes of action described in this Complaint.

51.   Particular issues under Rule 23(c)(4) are appropriate for certification because such claims present particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

**CLASS ACTION COMPLAINT**

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE/ NEGLIGENCE PER SE
### (on behalf of the Class)

52.     Plaintiff repeats, re-alleges, and incorporates by reference, paragraphs 1 through 51 of this complaint.

53.     Defendants owed a duty of care to Plaintiff and Class members to use reasonable means to secure and safeguard the entrusted PII, to prevent its unauthorized access and disclosure, to guard it from theft, and to detect any attempted or actual breach of their systems. These common law duties existed because Plaintiff and Class members were the foreseeable and probable victims of any inadequate security practices. In fact, not only was it foreseeable that Plaintiff and Class members would be harmed by the failure to protect their PII because hackers routinely attempt to steal such information and use it for nefarious purposes, but Defendants knew that they were more likely than not Plaintiff and Class members would be harmed by such exposure of their PII.

54.     Defendants' duties to use reasonable data security measures also arose under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect PII. Various FTC publications and data security breach orders further form the basis of Defendants' duties. In addition, individual states have enacted statutes based upon the FTC Act that also created a duty.

55.     Defendants' violations of Section 5 of the FTC Act constitute negligence per se.

56.     Defendants breached the aforementioned duties when they failed to use security practices that would protect the PII provided to it by Plaintiff and Class members, thus resulting in unauthorized third-party access to the Plaintiff's and Class members' PII.

-12-

**CLASS ACTION COMPLAINT**

57.     Defendants further breached the aforementioned duties by failing to design, adopt, implement, control, manage, monitor, update, and audit their processes, controls, policies, procedures, and protocols to comply with the applicable laws and safeguard and protect Plaintiff's and Class members' PII within their possession, custody, and control.

58.     As a direct and proximate cause of failing to use appropriate security practices, Plaintiff's and Class members' PII was disseminated and made available to unauthorized third parties.

59.     Defendants admitted that Plaintiff's and Class members' PII was wrongfully disclosed as a result of the breach.

60.     The breach caused direct and substantial damages to Plaintiff and Class members, as well as the possibility of future and imminent harm through the dissemination of their PII and the greatly enhanced risk of credit fraud or identity theft.

61.     By engaging in the forgoing acts and omissions, Defendants committed the common law tort of negligence. For all the reasons stated above, Defendants' conduct was negligent and departed from reasonable standards of care including by, but not limited to: failing to adequately protect the PII; failing to conduct regular security audits; and failing to provide adequate and appropriate supervision of persons having access to Plaintiff's and Class members' PII.

62.     But for Defendants' wrongful and negligent breach of their duties owed to Plaintiff and the Class, their PII would not have been compromised.

63.     Neither Plaintiff nor the Class contributed to the breach or subsequent misuse of their PII as described in this Complaint. As a direct and proximate result of Defendants' actions and inactions, Plaintiff and the Class have been put at an increased risk of credit fraud or identity theft, and Defendants have an obligation to mitigate damages by providing adequate credit and identity monitoring services. Defendants are liable to Plaintiff and the Class for the reasonable costs of future credit and identity

**CLASS ACTION COMPLAINT**

monitoring services for a reasonable period of time, substantially in excess of one year. Defendants are also liable to Plaintiff and the Class to the extent that they have directly sustained damages as a result of identity theft or other unauthorized use of their PII, including the amount of time Plaintiff and the Class have spent and will continue to spend as a result of Defendants' negligence. Defendants are also liable to Plaintiff and the Class to the extent their PII has been diminished in value because Plaintiff and the Class no longer control their PII and to whom it is disseminated.

**COUNT II**
**INVASION OF PRIVACY**
**(on behalf of the Class)**

64.     Plaintiff repeats, re-alleges, and incorporates by reference, paragraphs 1 through 51 of this complaint.

65.     Plaintiff and Class members have objective reasonable expectations of solitude and seclusion in their personal and private information and the confidentiality of the content of personal information and non-public medical information.

66.     Defendants invaded Plaintiff's and the Class's right to privacy by allowing the unauthorized access to their PII and by negligently maintaining the confidentiality of Plaintiff's and the Class's PII, as set forth above.

67.     The intrusion was offensive and objectionable to Plaintiff, the Class, and to a reasonable person of ordinary sensibilities in that Plaintiff's and the Class's PII was disclosed without prior written authorization from Plaintiff and the Class.

68.     The intrusion was into a place or thing which was private and is entitled to be private, in that Plaintiff and the Class provided and disclosed their PII to Defendants privately with an intention that the PII would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class

**CLASS ACTION COMPLAINT**

were reasonable to believe that such information would be kept private and would not be disclosed without their written authorization.

69.    As a direct and proximate result of Defendants' above acts, Plaintiff's and the Class's PII was viewed, distributed, and used by persons without prior written authorization and Plaintiff and the Class suffered damages as described herein.

70.    Defendants are guilty of oppression, fraud, or malice by permitting the unauthorized disclosure of Plaintiff's and the Class's PII with a willful and conscious disregard of their right to privacy.

71.    Unless and until enjoined, and restrained by order of this Court, Defendants' wrongful conduct will continue to cause Plaintiff and the Class great and irreparable injury in that the PII maintained by Defendants can be viewed, printed, distributed, and used by unauthorized persons. Plaintiff and the Class have no adequate remedy at law for the injuries in that a judgment for the monetary damages will not end the invasion of privacy for Plaintiff and the Class, and Defendants may freely treat Plaintiff's and the Class's PII with sub-standard and insufficient protections.

## COUNT III
## UNJUST ENRICHMENT
### (on behalf of the Class)

72.    Plaintiff repeats, re-alleges, and incorporates by reference, paragraphs 1 through 51 of this complaint.

73.    Plaintiff and the Class have an interest, both equitable and legal, in their PII that was conferred upon, collected by, and maintained by Defendants and that was ultimately compromised in the data breach.

74.    Defendants, by way of their acts and omissions, knowingly and deliberately enriched themselves by saving the costs they reasonably should have expended on security measures to secure Plaintiff's and the Class's PII.

**CLASS ACTION COMPLAINT**

75.   Defendants also understood and appreciated that the PII pertaining to Plaintiff and the Class was private and confidential and its value depended upon Defendants maintaining the privacy and confidentiality of that PII.

76.   Instead of providing for a reasonable level of security that would have prevented the breach—as is common practice among companies entrusted with such PII—Defendants instead consciously and opportunistically calculated to increase their own profits at the expense of Plaintiff and the Class. Nevertheless, Defendants continued to obtain the benefits conferred on them by Plaintiff and the Class. The benefits conferred upon, received, and enjoyed by Defendants were not conferred officiously or gratuitously, and it would be inequitable and unjust for Defendants to retain these benefits.

77.   Plaintiff and the Class, on the other hand, suffered as a direct and proximate result. As a result of Defendants' decision to profit rather than provide requisite security, and the resulting breach disclosing Plaintiff's and the Class's PII, Plaintiff and the Class suffered and continue to suffer considerable injuries in the forms of, *inter alia,* attempted identity theft, time and expenses mitigating harms, diminished value of PII, loss of privacy, and increased risk of harm.

78.   Thus, Defendants engaged in opportunistic conduct in spite of their duties to Plaintiff and the Class, wherein they profited from interference with Plaintiff's and the Class's legally protected interests. As such, it would be inequitable, unconscionable, and unlawful to permit Defendants to retain the benefits they derived as a consequence of their conduct.

79.   Accordingly, Plaintiff, on behalf of himself and the Class, respectfully request that this Court award relief in the form of restitution or disgorgement in the amount of the benefit conferred on Defendants as a result of their wrongful conduct, including specifically, the amounts that Defendants should have spent to provide reasonable and adequate data security to protect Plaintiff's and the Class's PII, and/or compensatory damages.

**CLASS ACTION COMPLAINT**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for a

judgment against Defendants as follows:

    a.  For an order certifying the proposed Class, appointing Plaintiff as Representative of the proposed Class, and appointing the law firms representing Plaintiff as counsel for the Class;

    b.  For compensatory and punitive and treble damages in an amount to be determined at trial;

    c.  Payment of costs and expenses of suit herein incurred;

    d.  Both pre-and post-judgment interest on any amounts awarded;

    e.  Payment of reasonable attorneys' fees and expert fees;

    f.  Such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury.

Dated:  January 14, 2025

By:      /s/Brett R. Cohen
          Brett R. Cohen (SBN 337543)
          **LEEDS BROWN LAW, P.C.**
          bcohen@leedsbrownlaw.com
          One Old Country Road, Suite 347
          Carle Place, New York 11514
          Tel: (516) 873-9550

          Jeffrey S. Goldenberg
          **GOLDENBERG SCHNEIDER, LPA**
          4445 Lake Forest Drive, Suite 490
          Cincinnati, OH 45242
          Telephone: (513) 345-8291
          jgoldenberg@gs-legal.com
          (Pro hac vice to be filed)

          Charles E. Schaffer
          **LEVIN SEDRAN & BERMAN, LLP**

**CLASS ACTION COMPLAINT**

510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: 215-592-1500
cschaffer@lfsblaw.com
(Pro hac vice to be filed)

***Counsel for Plaintiff and Proposed Class***

*Attorneys for Plaintiff & the Putative Class*

**CLASS ACTION COMPLAINT**